IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NISHAY BROWN,
as Administratrix of the Estate of Raequan
Stevens, dec'd

      Plaintiff,

v.                               C.A. No. 16-271-LPS

ROBERT M. COUPE
Commissioner State of Delaware Dept. Of
Corrections,
WARDEN STEVEN WESLEY
Howard R. Young Correctional Institution,
CONNECTIONS COMMUNITY
SUPPORT PROGRAMS, INC.,
MEDICAL JOHN DOES #1-10,
CORRECTIONAL OFFICERS
JOHN DOES #1-10,
DELAWARE DEPARTMENT
OF JUSTICE,

      Defendants.

---

Bruce W. McCullough, Bodell Bové, Wilmington, DE.

    Attorney for Plaintiff

Joseph Clement Handlon and Roopa Sabesan, Department of Justice, Wilmington DE.

    Attorney for Defendants Coupe and Wesley

Dana Spring Monzo, White & Williams, Wilmington, DE

    Attorney for Connections Community Support Programs, Inc.

**MEMORANDUM OPINION**

March 27, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Before the Court is a motion to dismiss Plaintiff's Amended Complaint ("Complaint") for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), filed by the State Defendants ("State Defendants") Robert Coupe, Commissioner of the Delaware Department of Correction ("Coupe" or "Commissioner"), and Steven Wesley ("Wesley" or "Warden"), Warden of the Howard R. Young Correctional Institution ("HRYCI"). (D.I. 17) The Complaint was filed by Nishay Brown ("Brown" or "Plaintiff"), administratrix of the estate of her son, Raequan Stevens ("Stevens"), who died while a pretrial detainee at HRYCI. Brown's claims arise under 42 U.S.C. § 1983 as well as Delaware negligence law. (*See* D.I. 14 ¶ 1) For the reasons stated below, the Court will grant the State Defendants' motion to dismiss.[1]

## II. FACTUAL BACKGROUND[2]

Stevens was arrested and placed in the custody of HRYCI on September 4, 2015. (D.I. 14 ¶ 14) At or around the time of his arrest, Stevens sustained a gunshot wound to the shoulder; but he was observed to be in otherwise good health when the HRYCI medical staff screened Stevens upon his incarceration at HRYCI. (*Id.* ¶¶ 15-16) From the beginning of his incarceration up until the time of his death on November 28, 2015, Stevens was in "regular contact with medical personnel" at HRYCI. (*Id.* ¶ 17)

---

[1] In addition to the State Defendants, Plaintiff is suing Connections Community Support Programs, Inc. ("Connections"), HRYCI's medical provider; medical John Does #1-10; and Correctional Officer John Does #1-10.

[2] This background is based on taking as true the well-pleaded factual allegations of the Complaint, as the Court must do at this stage of the proceedings.

1

On or about November 26, 2015, Stevens reported to "emergency sick call" with complaints of a severe, throbbing pain in his abdomen and chest, which he reported radiated to his stomach and thighs. (*Id.* ¶ 18) Stevens was "apparently suffering from appendicitis," as indicated by these complaints. (*Id.*) After an examination by the HRYCI medical staff, Stevens was returned to the general population, with two non-prescription drugs: a 400 milligram Motrin pill and two tablets of Tums. (*Id.*)

On the morning of November 28, 2015, the corrections staff received a complaint from Stevens' cellmate that a fluid issued from the upper bunk where Stevens slept. (*Id.* ¶ 20) When staff arrived at the cell, they found that Stevens had passed away. (*Id.* ¶ 21) An autopsy revealed that Stevens died from "Peritonitis due to [a] Ruptured Appendix." (*Id.* ¶ 22)

Plaintiff alleges that appendicitis is "easily detectable" and "readily treatable" by those possessing "basic medical knowledge." (*Id.* ¶ 23) She contends that the medical staff at HRYCI should have reasonably been able to identify Stevens' appendicitis based on the symptoms he reported on November 26. (*Id.* ¶ 24) Plaintiff alleges that trained personnel should have been able to recognize Stevens' condition and that the "lack of medical monitoring or assessment" resulted from a failure of State Defendants Coupe and Wesley to "establish appropriate policies, practices, and procedures for the monitoring and assessment of inmates who develop severe and acute medical conditions." (*Id.* ¶¶ 28-30)

According to the Complaint, State Defendants Coupe and Wesley are the direct and proximate cause of Stevens' death due to their awareness of his serious medical needs and inaction, namely their "deliberately indifferent and grossly negligent" failure to ensure Stevens received the evaluation and treatment he needed. (*Id.* ¶¶ 31-32) State Defendants are also

accused of "gross negligence and deliberate indifference" in their failures: (1) to monitor the performance of the prison medical provider, Connections; and (2) to "put into place training, policies, practices, and customs that would safeguard the rights" of inmates at HRYCI to receive basic medical care. (*Id.* ¶ 33, *see also id.* ¶¶ 46-49)

The Complaint contains three claims for relief: (i) violations of the Eighth and Fourteenth Amendments by Medical John Does and Correctional John Does; (ii) violations of the Eighth and Fourteenth Amendments by State Defendants and Connections; and (iii) negligence by Medical John Does and Connections. (*Id.* ¶¶ 43-57)

### III. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed,

however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## IV.     DISCUSSION

### 1.     Failure to State a Claim

State Defendants contend that Plaintiff fails to state a claim on which relief may be granted. (D.I. 17) In the view of State Defendants, Plaintiff's allegations seek to hold them liable under a theory of respondeat superior that lacks merit as a matter of law. (*Id.* at 6-7) Further, according to State Defendants, while the Complaint alleges that they were deliberately

indifferent to Stevens' medical needs, it does not do so in anything beyond a conclusory, non-plausible manner, which is inadequate to survive a motion to dismiss. (*Id.* at 9-11) The Complaint is additionally flawed, they continue, because it fails to identify any practice or policy that was or should have been in place and fails to allege a plausible causal link between State Defendants' actions (or inaction) and Stevens' death. (*Id.* at 12-13)

Plaintiff responds that her Complaint satisfies the "notice pleading" standard of Federal Rule of Civil Procedure 8, and contains allegations that are similar to those that survived dismissal in *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004). (D.I. 20 at 5-6) Plaintiff adds that it would be premature to dismiss her claims before she has had an opportunity to take discovery. (*Id.* at 6-7) Finally, Plaintiff argues that State Defendants share in the responsibility for the constitutional violations of their subordinates by virtue of their policy-making positions. (*Id.* at 7, 10-11)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *See id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

An inmate's claims against members of a prison medical department are not viable under

5

§ 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment, or where the inmate maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill*, 372 F.3d at 235 (citations omitted).

Even when reading the Complaint in the most favorable light to Plaintiff, and with full appreciation of the tragic consequences that Stevens and Brown have suffered, the Complaint fails to state an actionable constitutional claim against the State Defendants.[3] Rather, Plaintiff's claims sound in negligence. It is clear from the Complaint that Stevens was receiving medical treatment; even assuming that treatment was so deficient as to constitute medical malpractice, it would not constitute an actionable constitutional violation. The Complaint, therefore, fails to state a claim upon which relief may be granted under § 1983. *See generally Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

Plaintiff's attempt to rely on *Alston* is of no help to her. *Alston* predates *Iqbal*. In *Iqbal*,

---

[3]The Court assumes, as it must, that the facts alleged here are true. As Plaintiff summarizes in her brief, "a fit young man died of an easily treatable condition while an inmate in an institution that runs on a daily basis on policies and practices the state defendants have designed and articulated." (D.I. 20 at 5) However, the law is accurately characterized by State Defendants: "The unexpected death of any young person, however tragic, does not equate to liability, particularly personal liability for state officials many levels removed from any personal involvement on the ground." (D.I. 21 at 4)

6

the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Plaintiff's allegations against State Defendants are inconsistent with the instruction of *Iqbal*, as the Complaint attempts to hold the Commissioner and the Warden liable for actions taken (or not taken) by their subordinates, without State Defendants' personal involvement. This deficiency is another reason State Defendants' motion must be granted.

Nor is Plaintiff entitled to discovery in order to overcome a motion to dismiss. *See Iqbal*, 556 U.S. at 678-79 (stating that Rule 8's notice pleading standard "does not unlock the doors of discovery").

There are additional reasons the Complaint fails to meet the requirement to state a plausible claim for relief. First, the Complaint fails to identify any particular policy that was in place, or that should have been in place, on which Plaintiff might be able to ground a theory of liability against State Defendants. Moreover, the Complaint fails to state a plausible theory of causation; it does not explain how any policy State Defendants could have adopted and implemented would have saved Stevens' life in light of the alleged medical malpractice that occurred.[4] *See generally Parkell v. Markell*, 662 F. App'x 136, 141 (3d Cir. 2015) (dismissing claim against corrections supervisors where there were no factual allegations to support conclusion that department policies prevented inmate from receiving required medication). The

---

[4]The Complaint suggests (sadly) the contrary: if detecting appendicitis is as easy as alleged, it would follow that the cause of Stevens' unfortunate death was not any policy or lack of one, but rather a failure of medical staff to identify and respond to an allegedly obvious risk.

"setting in motion" theory of causation on which Plaintiff appears to rely (*see* D.I. 20 at 11) is inconsistent with the Third Circuit's requirement that a challenged policy/practice cause the alleged injury. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, judgment rev'd sub nom., Taylor v. Barkes*, 135 S.Ct. 2042 (2015); *Sample v. Diecks*, 885 F.2d 1099, 1117-18 (3d Cir. 1989). Furthermore, when alleging deliberate indifference to a serious medical need against a non-medical prison official (like the State Defendants here), there must be "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236. The Complaint does not satisfy this requirement.

Accordingly, the Complaint's claim against State Defendants will be dismissed.

### 2. Qualified Immunity

Even if the Complaint did state a plausible claim for relief, the Court would still have to grant the motion because State Defendants are protected by qualified immunity.

Qualified immunity shields government officials from civil damages liability unless the official violated a constitutional right that was clearly established at the time of the alleged conduct. *See Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). The Supreme Court has held that where the purported right that was violated is not "clearly established," courts may recognize the immunity – and dismiss the claims – without resolving the often more difficult question of whether the purported right even exists. *See Pearson v. Callahan*, 555 U.S. 223, 237 (2009). To be "clearly established," a right must be sufficiently clear that every "reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731,

741 (2011). In other words, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

The Court agrees with State Defendants that, at the pertinent time (2015), pretrial detainees did not have a "clearly established" right that State Defendants are adequately alleged to have violated. While Plaintiffs are certainly correct that there was, at the pertinent time as now, a "clearly established" right to adequate medical care while in the custody of the State, that general right is not at issue here. For purposes of qualified immunity, the Court cannot rely simply on the "broad imperative" of providing adequate medical care, but must instead focus on the particular conduct that is alleged to have constituted a violation. *Michtavi v. Scism*, 808 F.3d 203, 206 (3d Cir. 2005) (granting summary judgment to defendants where "particular conduct at issue" was "the failure to treat retrograde ejaculation," based on finding there was no clearly established right to such treatment); *see also Barkes*, 766 F.3d at 326 (explaining that to be clearly established, "the asserted right must be sufficiently bounded that it gives practical guidance to officials on the ground. . . . The ultimate question in the qualified immunity analysis is whether the defendant had fair warning that his conduct deprived his victim of a constitutional right.") (internal quotation marks and citations omitted). Thus, the Court agrees with State Defendants: "Plaintiff simply fails to allege that any particular ***conduct*** of State Defendants violates clearly established law, and alleging generally that they failed to enact policies to insure incidents . . . such as these do not happen fails to focus the analysis on any particular conduct." (D.I. 21 at 10)[5]

---

[5] *See also generally Anderson v. Marshall Cty., Miss.*, 2013 WL 1767843, at *5 (N.D. Miss. Apr. 24, 2013) ("The court is neither unaware of nor unsympathetic to the procedural and factual quagmire the rigid parameters of the qualified immunity and Eighth Amendment analyses pose for wrongful death plaintiffs. Not only do they lack access to the facts as could be

For this additional reason, the Court must grant State Defendants' motion to dismiss.

## V. CONCLUSION

The Court will grant State Defendants' motion to dismiss.[6] (D.I. 17) In addition, the Court will deny as moot Defendants' motion to dismiss the original complaint (D.I. 10), which was mooted by Plaintiff's filing of the Amended Complaint (D.I. 14).

Finally, the Court will deny without prejudice the Connections Defendants' motion for *in camera* review of Plaintiff's affidavit of merit, which asks the Court to determine if certain deficiencies render the affidavit inadequate. (D.I. 16) The Connections motion was filed back in August 2016 and there has never been any response to it. In the meantime, the parties appear to have initiated discovery. Under the circumstances, the Court will direct the remaining parties to this action to meet and confer and provide a joint status report, which shall include their position(s) on whether review of the affidavit of merit is still requested.

---

communicated from the decedent herself, but they also are not apprised, absent some discovery, of the goings on within prison walls. This concern, however, does not lighten the weight imposed on plaintiffs facing the qualified immunity defense to a charge of inhumane conditions in a prison.").

[6]It is unclear whether the Complaint is attempting to state claims against State Defendants in their official capacities. If so, such claims would need to be dismissed as barred by Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.").