# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NISHAY BROWN, as Administratrix of the Estate of Raequan Stevens, decedent, | : : : | |
| | : | C.A. No. 16-271-CCC |
| Plaintiff, | : : | |
| | : | |
| v. | : : | TRIAL BY A JURY OF TWELVE DEMANDED |
| | : | |
| CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., et al. | : : : | |
| | : | |
| Defendants. | : : | |

## MEDICAL DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF'S SECOND AMENDED COMPLAINT

WHITE AND WILLIAMS LLP

BY: *Randall MacTough*

Dana Spring Monzo (DE ID 4605)
Randall S. MacTough (DE ID 6108)
600 N. King Street, Suite 800 |
Wilmington, DE 19801-3722
Phone: 302.654.0424
Attorneys for Defendants
Connections Community Support
Programs, Inc., James Moles, Erica
Saunders, and Allen Samuels, M.D.

Dated:  January 2, 2018

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ...........................................................1

SUMMARY OF THE ARGUMENT .........................................................................3

STATEMENT OF THE FACTS .................................................................................4

      A.     Plaintiff's allegations against the individual medical defendants...........................4

      B.     Plaintiff's claims against CCSP. .............................................................5

ARGUMENT .............................................................................................................7

I.     Plaintiff's Second Amended Complaint must satisfy the *Twombly* and *Iqbal* pleading standard. .................................................................................7

II.    Plaintiff's Second Amended Complaint fails to state a claim for deliberate indifference to a serious medical need. ........................................................8

      A.     A deliberate indifference to a serious medical need is a conscious disregard to a serious risk of harm posed by a medical condition. .........................8

      B.     Plaintiff merely claims medical negligence. ........................................10

      C.     CCSP cannot be held liable when there is no underlying civil rights violation. ................................................................................................11

      D.     CCSP is deliberately indifferent only if it maintains a policy, practice, or custom that causes the inmate's alleged harm. ......................................11

      E.     The Second Amended Complaint does not specifically plead that CCSP made a deliberate choice not to implement a policy, or train and supervise its employees to ensure inmates receive adequate medical care............................13

III.    Conclusion .................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................7

*Barkes v. First Corr. Med. Inc.*,
   766 F.3d 307 (3d Cir. 2014)......................................................................................11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................7

*Burtch v. Millberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011)..............................................................................................7

*City of Canton v. Harris*,
   489 U.S. 378 (1989)....................................................................................................11, 12

*Cloyd v. Del. Cnty.*,
   2015 U.S. Dist. LEXIS 36480 (E.D. Pa. March 23, 2105)..............................................13

*Estelle v. Gamble*,
   429 U.S. 97 (1976)............................................................................................................8

*Farmer v. Brennan*,
   511 U.S. 825 (1994)..........................................................................................................8

*Freedman v. City of Allentown*,
   853 F.2d 1111 (3d Cir. 1988)..........................................................................................12

*Goodrich v. Clinton Cnty. Prison*,
   214 F. App'x 105 (3d Cir. 2007) ....................................................................................11

*Hanewinckel v. Appelbaum*,
   2016 U.S. Dist. LEXIS 134307 (D. Del. Sept. 29, 2016)..............................................12

*In re. Ins. Brokerage Antritrust Litig.*,
   618 F.3d 300 (3d Cir. 2010)..............................................................................................7

*McTernan v. City of York*,
   564 F.3d 636 (3d Cir. 2009)......................................................................................11, 12

*Monell v. N.Y.C. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)...........................................................................................5, 11, 12, 13

*Monmouth Cnty Corr. Inst. Inmates v. Lanzaro*,
   834 F.2d 326 (3d Cir. 1987) ................................................................8, 9

*Parkell v. Markell*,
   622 F. App'x 136 (3d Cir. 2015) ........................................................13

*Pearson v Prison Health Servs.*,
   850 F.3d 526 (3d Cir. 2017) ..................................................................9

*Robinson v. Corizon Health, Inc.*,
   2016 U.S. Dist. LEXIS 43237 (E.D. Pa. March 30, 2016) ..................9, 12

*Rouse v. Plantier*,
   182 F.3d 192 (3d Cir. 1999) ...................................................................8

*Sample v. Diecks*,
   885 F.2d 1099 (3d Cir. 1989) ................................................................11

*Shabazz v. Connections Cmty. Support Programs, Inc.*,
   2017 U.S. Dist. LEXIS 194621 (D. Del. Nov. 27, 2017) ......................12

*Sparks v. Susquehanna County*,
   2007 U.S. Dist. LEXIS 20279 (M.D. Pa. March 21, 2007) ....................9

*United States ex rel. Walker v. Fayette Cnty.*,
   599 F.2d 573 (3d Cir. 1979) ...................................................................9

*West v. Atkins*,
   487 U.S. 42 (1988) ................................................................................11

OTHER AUTHORITIES

U.S. Const. amend VIII ..........................................................................8, 14

U.S. Const. amend XIV ...............................................................................8

Karen M. Blum, *Making Out the Monell Claim under Section 1983*, 25 Touro L.
   Rev. 831 (2009) .....................................................................................11

Fed. R. Civ. P. 12(b)(6) ...............................................................................2

## NATURE AND STAGE OF PROCEEDINGS

On April 14, 2016, Plaintiff, Nishay Brown, as the administratrix for the Estate of Raequan Stevens, filed a combined civil rights and medical negligence action against Connections Community Support Programs, Inc. ("CCSP")[1] and its John Doe employees, Robert M. Coupe, Commissioner of the State of Delaware Department of Correction ("DOC"), and Steven Wesley, Warden of Howard R. Young Correctional Institution ("HYRCI") (the Commissioner and the Warden are collectively referred to as the "State Defendants").  (Compl. ¶ 1, D.I. 1).  Plaintiff's son, Raequan Stevens, allegedly died from appendicitis while he was held as a pre-trial detainee at HRYCI.  *Id.*  Plaintiff claims that Mr. Steven's death was caused by the Defendants' deliberate indifference to his serious medical need.  (*Id.*)  She also raised a medical negligence claim under Delaware state law against CCSP and its unidentified employees.  (*Id.*)

Due to Plaintiff's failure to plead with particularity that a policy, practice, or custom caused the alleged constitutional harm, the State Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted.  (D.I. 10).  Plaintiff then attempted, and failed, to correct the Complaint's deficiencies, by adding conclusory language to her Amended Complaint filed on June 6, 2016.  (Am. Compl., D.I. 14).  Because the Amended Complaint's allegations still failed to sufficiently plead a claim of deliberate indifference, this Court granted the State Defendants' renewed motion to dismiss. (*See* D.I. 17, 50, and 51).  As the Court explicitly held in its March 27, 2017 Opinion: (1) Plaintiff's claim is "sound in negligence," and therefore not "an actionable constitutional violation;" and (2) Plaintiff failed to "identify any particular policy that was in place, or that should have been in place" that supported her theory of liability against the State Defendants.  (D.I. 50 at 6-7).

---

[1] CCSP is the medical and mental healthcare provider for the State of Delaware Department of Correction.

In light of the Court's ruling on the State Defendants' motion to dismiss, CCSP filed a motion for judgment on the pleadings.  (D.I. 79-80)[2]  Alerted to her pleading deficiencies through the Defendants' extensive briefing and this Court's March 27th Opinion, Plaintiff then moved to a file a second amended complaint before the Court addressed CCSP's motion for judgment on the pleadings.  (D.I. 85-86)  On September 25, 2017, this Court granted Plaintiff leave to file a second amended complaint and in so doing denied CCSP's motion without prejudice as moot.  (D.I. 90)

Although CCSP and the State Defendants spelled out how Plaintiff's claim of deliberate indifference was fatally flawed, Plaintiff for the ***third*** time failed to sufficiently plead a claim of deliberate indifference.  While the Second Amended Complaint identifies the specific CCSP employees allegedly involved in the constitutional tort (Allen Samuels, M.D., James Moles, P.A., Mistie Robinson, R.N., and Erica Saunders, R.N., hereinafter the "Medical Defendants")[3], (Second Am. Compl. ¶¶ 3-10, D.I. 91), and states some additional facts, it still does not sufficiently allege that CCSP and its named employees were deliberately indifferent to Mr. Stevens's medical condition.  Specifically, Plaintiff's allegations merely show that Mr. Stevens's appendicitis was mis-diagnosed and as a result the Medical Defendants were not aware of the urgent nature of his condition.  That is a claim of medical negligence; not deliberate indifference.  Accordingly, the Medical Defendants move to dismiss Plaintiff's claim of deliberate indifference.

---

[2] The Medical Defendants answered the Amended Complaint, instead of filing a motion to dismiss pursuant to Rule 12(b)(6), (D.I. 15), and thereafter filed a motion for judgment on the pleadings.
[3] Plaintiff also alleges that Kimberly Scott, R.N. was an employee of CCSP, but that allegation is incorrect.  *See* Def. Kimberly Scott, RN's Ans. to Pl. Second Am. Compl. ¶ 6, D.I. 102.

## <u>SUMMARY OF THE ARGUMENT</u>

This motion to dismiss requires that the following question be answered:

> 1. A medical care provider manifests a deliberate indifference to a detainee's serious medical need when he/she knows of the detainee's need for treatment and fails to provide it. Here, the only inference from the Second Amended Complaint is that CCSP's employees were *unaware* that Mr. Stevens had appendicitis and needed immediate medical attention because they negligently mis-diagnosed his medical condition. Were CCSP's employees deliberately indifferent to Mr. Stevens's serious medical need?

The facts alleged in the Second Amended Complaint only plausibly plead medical negligence, which is insufficient to establish that the Medical Defendants manifested a deliberate indifference. Therefore, the deliberate indifference claim must be dismissed.

But, if this Court determines that Plaintiff adequately pleaded a deliberate indifference claim against CCSP's employees, another question remains:

> 2. A plaintiff that alleges the medical care contractor is liable for a constitutional harm caused by its employees must plead with specificity the policy, practice, or custom maintained (or failed to maintain) that caused the constitutional harm. Here, the Second Amended Complaint generally alleges that CCSP failed to train and monitor its employees to ensure inmates at HRYCI received adequate medical treatment, but is devoid of any particularized allegations. Does the Second Amended Complaint sufficiently plead that CCSP is liable for the alleged constitutional harm sustained by Mr. Stevens?

The Second Amended Complaint uses conclusory language without sufficient facts to allege that CCSP failed train its employees and implement policies to ensure inmates receive treatment for serious medical conditions. These conclusory allegations do not satisfy the pleading standard required to state a claim against CCSP.

## STATEMENT OF THE FACTS

### A.   Plaintiff's allegations against the individual medical defendants.

On September 4, 2015, Mr. Stevens was assigned to HRYCI as a pre-trial detainee. (Second Am. Compl. ¶ 36).  She admits that Mr. Stevens was in "regular contact" with CCSP staff for treatment related to a gunshot wound he sustained during his arrest.  (*Id.* ¶¶ 38-39).  On November 26, 2015, Mr. Stevens experienced pain in his abdomen and chest that radiated to his stomach and thighs.  (*Id.* ¶ 40)   As Plaintiff concedes, Kimberly Scott, R.N. examined Mr. Stevens in response to the sick call. (*Id.* and Ex. B ¶ 3)  An EKG revealed sinus tachycardia and "non-specific ST abnormality."  (*Id.*, Ex. B ¶ 3)  Nurse Scott provided James Moles, P.A. with the results, who then ordered that Mr. Stevens see a physician and prescribed Motrin and Tums. (Second Am. Compl. ¶ 40 and Ex. B ¶ 3).  Before the end of the examination, Nurse Scott told Mr. Stevens to return "if pain doesn't get any better or gets worse."  (*Id.*, Ex. B ¶ 3).  Plaintiff claims that on November 26, 2015, Mr. Stevens was suffering from appendicitis, which, as she alleges "is a medical condition that is easily detectable and readily treatable by the mere existence of basic medical knowledge."  (*Id.* ¶ 47).  Essentially, Plaintiff alleges that although Mr. Stevens displayed symptoms of appendicitis, it was not diagnosed.[4]

The allegations about the lack of treatment after the November 26, 2015 examination are directly attributed to the failure to diagnose the alleged obvious case of appendicitis.  Plaintiff claims that Dr. Samuels was aware of Mr. Stevens's complaint of *pain* and the order for an examination, but did not conduct a follow up.  But Plaintiff does not contend that Dr. Samuels was aware that Mr. Stevens had life-threatening appendicitis.  (*See id.* ¶ 43).  Moreover, Plaintiff

---

[4] This Court stated as much in its March 27, 2017 Opinion: "The Complaint suggests (sadly) the contrary: if detecting appendicitis is as easy as alleged, it would follow that the cause of Stevens' unfortunate death was not any policy or lack of one, but a *failure of medical staff to identify and respond to an allegedly obvious risk*."  (D.I. 50 at 7 n.4).

claims that although Mistie Robinson, R.N. and Erica Saunders, R.N. "visited his cell" before he died, neither acted on the referral to see a physician.  (*Id.* ¶ 56)  But Plaintiff does not allege that Mr. Stevens complained to them about pain as he was instructed to do if it continued, or that they denied him treatment otherwise.  In fact, Plaintiff alleges that in general the "lack of medical monitoring or assessment was due to the failure of . . . Kimberly Scott and James Moles . . . to *inform* medical and correctional staff that Mr. Stevens required such monitoring and assessment . . .." (*Id.* ¶ 56)  To that end, Plaintiff also asserts that "[a]ll defendants failed to consider that Mr. Stevens' symptoms required *further* investigation by a medical professional," (*Id.* ¶ 49), and that "[b]asic testing would have revealed that [he] may have been suffering from appendicitis."  (*Id.* ¶ 51)  In sum, Plaintiff's allegations connote medical negligence, not deliberate indifference.  Less than forty-eight hours after the examination by Nurse Scott, Mr. Stevens was found dead by his cellmate.  (*Id.* ¶ 44).   The autopsy revealed that Mr. Stevens died of "Peritonitis due to Ruptured Appendix."  (*Id.* ¶ 46).

### B.  <u>Plaintiff's claims against CCSP.</u>

Plaintiff attempts but yet again fails to state a *Monell* claim against CCSP.  She alleges that CCSP manifested a deliberate indifference because it "failed to establish policies, practices, and procedures to ensure that inmates in HRYCI suffering from acute and life-threatening medical conditions receive immediate life-saving care and treatment."  (*Id.* ¶ 77).   Importantly, Plaintiff does not allege what specific policies, practices, and procedures should have been in place to address life-threatening medical conditions.  And, what's more, this allegation flies in the face of Dr. Gincherau's report, which explicitly acknowledges the existence of a nursing assessment protocol for emergent abdominal pain that required certain diagnostic testing.  (Ex. B ¶ 3(2))  Dr. Gincherau attributes Nurse Scott's alleged failure to follow that protocol as a factor in the missed diagnosis of Mr. Stevens' condition.  (*See id.*).

Plaintiff also alleges, again in general terms, that CCSP failed to implement "training, policies, practices and customs that would guarantee that all inmates in HRYCI received adequate medical care." (*Id.*)  Just like the Complaint and First Amended Complaint, the Second Amended Complaint fatally omits even one other instance where an inmate at HRYCI failed to receive "adequate medical care."  (*Id.*)   Accordingly, Plaintiff's claim fails to state a claim against the Medical Defendants.

## ARGUMENT

I.  **Plaintiff's Second Amended Complaint must satisfy the *Twombly* and *Iqbal* pleading standard.**

A complaint fails to state a claim when the facts alleged, accepted as true and construed in a light most favorable to the plaintiff, are insufficient to raise a "reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (citing *In re. Ins. Brokerage Antritrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). "Factual allegations must be enough to a raise a right to relief above the speculative level . . .." *Iqbal*, 550 U.S. at 555. The Third Circuit instructs this Court to use the following three step approach to assess the sufficiency of a complaint:

> First, the court must "[t]ake note of the elements a plaintiff must plead to state a claim." Second, the court must identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burch*, 662 F.3d at 221 (citations omitted).

Along with that three-step approach, this Court must keep in mind that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is not enough for the court to accept those allegations as true, and that allegations must raise more than an inference that there is a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 678-79.

20162051v.1

## II.      Plaintiff's Second Amended Complaint fails to state a claim for deliberate indifference to a serious medical need.

### A.      A deliberate indifference to a serious medical need is a *conscious disregard* to a serious risk of harm posed by a medical condition.

It is a constitutional mandate that a person confined in a correctional institution receive adequate medical care.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Monmouth Cnty Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 n.31 (3d Cir. 1987) (stating that although the due process clause under the Fourteenth Amendment governs pre-trial detainees, the "deliberate indifference" standard under the Eighth Amendment claim still applies).  To state a claim for the denial of adequate medical care the plaintiff "must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) those needs were serious."  *Rouse*, 182 F.3d at 197.  Deliberate indifference is conduct that demonstrates "recklessness" or a "*conscious disregard* of a serious risk."  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)(emphasis added)).  The requisite culpability to state a deliberate indifference claim exceeds the threshold to state a claim for negligence or medical negligence.  It can be shown when a medical care provider: (1) *knows* that a prisoner needs medical attention but "*intentionally* refuses to provide it;" (2) delays treatment for a non-medical reason; or (3) interferes with the prisoner's medical treatment.  *Id.* (emphasis added).  These three scenarios require that the medical care provider is aware of the inmate's need for particular medical treatment and knowingly denies or delays it.

The Supreme Court articulated the standard for this constitutional tort in *Estelle*: "In the medical context, an *inadvertent failure* to provide medical care *cannot* be said to constitute 'an unnecessary and wanton infliction of pain' or to be repugnant to the conscience of mankind.'"  *Estelle*, 429 U.S. at 106 (emphasis added).  In other words, misdiagnosis, mistake, and/or medical negligence do not constitute deliberate indifference.  *Rouse*, 182 F.3d at 192.  "[M]ere

disagreement" with the form of treatment is not sufficient. *Pearson v Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) (citing *Lanzaro*, 834 F.2d at 346).   Indeed, when a prisoner "receive[s] some medical attention and the dispute is over the adequacy of the treatment" the claim is a state medical negligence claim. *See United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (citation omitted).

A claim is ripe for dismissal if the plaintiff fails to plead that the medical care provider knew about the plaintiff's serious medical condition.  In *Robinson v. Corizon Health, Inc.*, the plaintiff alleged that the staff of a prison medical care provider knew he had kidney cancer.  2016 U.S. Dist. LEXIS 43237, at *24 (E.D. Pa. March 30, 2016).   The court granted the medical defendants' motion to dismiss because the plaintiff "allege[d] no fact to support an inference that defendants had the knowledge which he alleges." *Id.* at *24-25.   The court also held that the plaintiff's claim that the medical defendants failed to conduct tests that would have revealed this diagnosis was insufficient to state a claim for deliberate indifference. *Id.* at *25. (emphasis added).

In contrast, a deliberate indifference claim will survive when knowledge of the serious medical need is pleaded by the plaintiff.  In *Sparks v. Susquehanna County*, the plaintiff was a detainee that suffered from asthma and respiratory problems which were necessarily treated with a nebulizer that she brought with her.  2007 U.S. Dist. LEXIS 20279, at *1-2 (M.D. Pa. March 21, 2007).  The plaintiff died because she did not have access to the nebulizer. *Id.* at *2.  The plaintiff alleged that the jail's doctor knew that (1) the plaintiff's condition required treatment with a nebulizer; (2) she did not have access to it; and (3) the lack of access posed a serious risk of danger. *Id.* at *2-3.   The Court denied the doctor's motion to dismiss because those allegations could be viewed as an intentional denial of necessary medical care. *Id.* at *7.  In

other words, the plaintiff asserted facts that the medical care provider was aware of the serious medical condition.

### B.   Plaintiff merely claims medical negligence.

As the Second Amended Complaint alleges, Mr. Stevens was in good health, other than a gunshot wound, which the plaintiff admits he was regularly treated for, when he started his detention at HRYCI.  When he complained about abdominal pain he was evaluated that same day, prescribed medication, and an order was placed to see a physician.  The Second Amended Complaint does not allege that the medical staff knew Mr. Stevens suffered from appendicitis. Nor does it allege that the physician that was supposed to evaluate him knew he had appendicitis. Indeed, the Second Amended Complaint alleges the opposite; the defendants "failed to consider that Mr. Steven's required further investigation by a medical professional."  As it further alleges, if "basic testing" was done, then his condition would have been diagnosed.  Put another way, Mr. Stevens's serious medical condition was unknown.  In *Robinson*, unlike the case *sub judice*, the plaintiff at least made a conclusory statement that the medical defendants "knew" he had kidney cancer and the court still found that was factually insufficient to overcome a motion to dismiss.

Plaintiff's allegations here are a far cry from those in *Sparks* where the plaintiff specifically pleaded that the jail doctor knew that the decedent had asthma and did not have access to her necessary nebulizer.  The Second Amended Complaint fails to adequately plead a claim for deliberate indifference to a serious medical need against the Medical Defendants. Nurse Scott evaluated and treated Mr. Stevens in response to his medical complaints.  To the extent there was a mistake or that she misdiagnosed his condition, the seriousness of Mr. Stevens's condition was unknown to Nurse Scott and all of the other providers, including Dr. Samuels, James Moles, Mistie Robinson, and Erica Saunders.  Because Mr. Stevens's appendicitis was unknown, the Medical Defendants could not consciously disregard it and

-10-

therefore on this basis and the fact that he received medical care, Plaintiff has failed to state a claim for deliberate indifference.  Further, the fact that "basic testing" was not performed that could have revealed the diagnosis of appendicitis cannot be the basis for a claim of deliberate indifference.  *See Robinson,* 2016 U.S. Dist. LEXIS 43237, at *25.  The failure to discover his malady is, at best, medical negligence; a proposition that this Court agreed with in its March 27th Opinion.

### C.    CCSP cannot be held liable when there is no underlying civil rights violation.

When there is no underlying violation of a constitutional right then the state actor accused of establishing a policy, practice, or custom that caused the alleged constitutional harm cannot be liable.  *Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007).  As discussed, the Second Amended Complaint failed to sufficiently plead a claim for deliberate indifference because Plaintiff's allegations are based under state tort law theories.  Thus, there is no viable claim against CCSP.

### D.    CCSP is deliberately indifferent only if it maintains a policy, practice, or custom that causes the inmate's alleged harm.

The medical care contractor retained by the state to provide medical care to inmates cannot be held liable for an employee's deliberate indifference to a serious medical need unless it maintained a policy, practice, or custom that caused the manifestation of the constitutional harm. *See McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also West v. Atkins*, 487 U.S. 42, 53-58 (1988) (holding that private organizations that contract with the state are state actors for purposes of a Section 1983 claim).  A failure to train or supervise as alleged by Plaintiff is a variation of a *Monell* claim.  *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, judgment rev'd sub nom.*, *Taylor v.*

-11-

*Barkes*, 135 S. Ct. 2042 (2015); *see also* Karen M. Blum, *Making Out the Monell Claim under Section 1983*, 25 Touro L. Rev. 831, 831-32 (2009) (outlining the four methods to establish municipal liability under *Monell*, including the fail to "blank": method).  Under that theory, the medical care contractor is liable if its failure to train or supervise its employees amounts to a deliberate indifference to inmates' constitutional rights and that deliberate indifference causes the alleged constitutional harm. *City of Canton*, 489 U.S. at 389-90; *see Sample v. Diecks*, 885 F.2d 1099, 1117 (3d Cir. 1989) (defining supervision as training, establishing expected performance, monitoring adherence to performance standards, and responding to unacceptable performance).  Such a failure is considered a "policy" when it was a "deliberate choice to follow a course of action . . . among various alternatives."  *City of Canton*, 489 U.S. at 389.  To state a claim against a prison's medical care contractor the plaintiff must allege with specificity:

> (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the [state actor] was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes*, 766 F.3d at 317; *McTernan*, 564 F.3d at 658.  As the Third Circuit stated in *McTernan* "[t]o satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *Id.*; *Shabazz v. Connections Cmty. Support Programs, Inc.*, 2017 U.S. Dist. LEXIS 194621, at *7 (D. Del. Nov. 27, 2017).

In *Robinson*, the plaintiff alleged that the medical care contractor in a prison had a policy, practice, and custom of failing to provide "prompt and adequate treatment" to senior citizen inmates with chronic diseases and illnesses serving life sentences.  2016 U.S. Dist. LEXIS 43237, at *19.  In support of this claim, the plaintiff cited to "numerous allegations" against the contractor related to its operations at other prisons.  *Id.* at *19-20.  The Court held that the

plaintiff's *Monell* claim failed because he "provide[d] no factual details regarding the existence, scope or application of the policies, practices, procedures or customs that he claims give rise to his claim. *Id.* at *21-22 (citation omitted); *see also Freedman v. City of Allentown*, 853 F.2d 1111, 1116-17 (3d Cir. 1988) (dismissing a claim for a city's alleged failure to train police officers to handle mentally disturbed persons or to appropriate sufficient funds for training when there wasn't "a modicum of factual support" in the complaint that the city chose not to train the officers); *Hanewinckel v. Appelbaum*, 2016 U.S. Dist. LEXIS 134307, at *16-17 (D. Del. Sept. 29, 2016) (holding that plaintiff's allegation that the defendants' retaliation against those who exercised their First Amendment rights "was carried out pursuant to a . . . policy targeting [P]laintiffs for discriminatory treatment" was insufficient to state a *Monell* claim) (alteration in original); *Cloyd v. Del. Cnty.*, 2015 U.S. Dist. LEXIS 36480, *7-10 (E.D. Pa. March 23, 2105) (dismissing a *Monell* claim against the prison medical care contractor because the plaintiff's complaint offered "scant factual evidence" that the county and the medical care contractor maintained policies that violated his constitutional rights).

> ### E.   The Second Amended Complaint does not specifically plead that CCSP made a deliberate choice not to implement a policy, or train and supervise its employees to ensure inmates receive adequate medical care.

Plaintiff alleges that CCSP failed to provide training and implement policies, practices, or customs that guarantee that the inmates at HRYCI received adequate medical care. She omits, however, any specific factual support for this claim. Rather, much like *Robinson*, where the plaintiff alleged that the medical care contractor maintained a policy that failed to treat prisoners with life sentences for their chronic conditions without articulating what that policy was, Plaintiff recites the elements of a 'failed to:' *Monell* claim without stating what that policy was or should have been. Moreover, she does not adequately plead that this unspecified policy caused Mr. Stevens's death. To the contrary, Dr. Gincherau's report attached as an exhibit to the Second

Amended Complaint attributes Nurse Scott's failure to follow an established policy—the urgent abdominal pain nursing protocol—to Mr. Stevens's death.

Finally, the allegations in this case are less specific than those in *Robinson* where the plaintiff referenced "numerous allegations" of wrongful conduct at other prisons.  Indeed, the Second Amended Complaint does not cite one other occasion when an inmate did not receive adequate medical care as a result of CCSP's alleged failure to train and implement policies to treat serious acute medical conditions.  See *Parkell v. Markell*, 622 F. App'x 136, 140 (3d Cir. 2015) (finding that plaintiff's failure to protect claim was too conclusory because it did not state how frequent prison fights occurred, how many resulted in serious injury, and the guards' response to those fights).

## III.   <u>Conclusion</u>

Plaintiff's Second Amended Complaint fails to state a claim for deliberate indifference to a serious medical need against the Medical Defendants, which requires the dismissal of the Eighth Amendment claim against them.

But, even if this Court determines that the deliberate indifference claim is sufficiently plead against CCSP's employees, it fails against CCSP itself because it fails to plead a particular policy, practice, or custom that caused Mr. Stevens's death.  Thus, this Court must dismiss the deliberate indifference claim against CCSP.

(signature on next page)

20162051v.1

WHITE AND WILLIAMS LLP

BY: _____
Dana Spring Monzo (DE ID 4605)
Randall S. MacTough (DE ID 6108)
600 N. King Street, Suite 800 |
Wilmington, DE 19801-3722
Phone: 302.654.0424
Attorneys for Defendants
Connections Community Support
Programs, Inc., James Moles, Erica
Saunders, and Allen Samuels, M.D.

Dated:  January 2, 2018

-15-